UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOHN GLYNN BREAU

VERSUS

NANCY A. BERRYHILL

CIVIL ACTION

NO. 17-413-BAJ-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 14, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOHN GLYNN BREAU

VERSUS

NANCY A. BERRYHILL

CIVIL ACTION

NO. 17-413-BAJ-EWD

**REPORT AND RECOMMENDATION**

Plaintiff, John Glynn Breau ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] Plaintiff has filed an Opening Brief,[2] the Commissioner has filed an Opposition Memorandum,[3] and Plaintiff has filed a Reply.[4]

Based on the applicable standard of review under § 405(g) and the analysis which follows, the undersigned recommends that the Commissioner's decision be AFFIRMED.

**I.    Procedural History**

Plaintiff filed an application for DIB on August 5, 2014[5] and an application for SSI on August 27, 2014[6] alleging disability beginning January 1, 2008.[7] Plaintiff asserted that he is unable

---

[1] *See*, AR pp. 174-180 (application for DIB); AR pp. 181-186 (application for SSI); AR pp. 1-4 (Notice of Appeals Council Action). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."

[2] R. Doc. 8.

[3] R. Doc. 11.

[4] R. Doc. 12.

[5] AR pp. 174-180.

[6] AR pp. 181-186.

[7] AR pp. 174-180; AR pp. 181-186. During the hearing before the Administrative Law Judge ("ALJ"), Plaintiff amended his alleged disability onset date to August 13, 2012. *See*, AR pp. 37-38. It appears that Plaintiff previously submitted applications for DIB and SSI on September 22, 2010 alleging a disability onset date of September 13, 2010. AR pp. 163-169 (September 22, 2010 application for DIB); AR pp. 170-173 (September 22, 2010 application for SSI).

2

to work due to back pain and anxiety.[8]

Plaintiff's claim was initially denied on January 15, 2015.[9]  Thereafter Plaintiff requested a hearing before an ALJ.[10]  A hearing was held on March 30, 2016 at which Plaintiff, represented by counsel, testified.[11]  A vocational expert ("VE"), Thomas Mungall, also appeared and testified.

On May 24, 2016, the ALJ issued a notice of unfavorable decision.[12]  Thereafter, Plaintiff requested review by the Appeals Council.[13]  On May 9, 2017, the Appeals Council denied Plaintiff's request for review.[14]  On June 29, 2017, Plaintiff filed his Complaint.[15]  Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[16]

---

Plaintiff previously alleged disability because of bulging discs, spinal stenosis, anxiety, anger management problems, and possible mental problems.  *See*, AR p. 98.   On January 6, 2011, a Notice of Disapproved Claims was issued to Plaintiff finding that Plaintiff was not disabled.  AR pp. 98-101.  Although the Notice of Disapproved Claims instructed Plaintiff that he could request a hearing before an administrative law judge ("ALJ") if he disagreed with the denial, the administrative record does not include any such request and therefore it appears that Plaintiff did not seek further review of the January 6, 2011 denial.

[8] *See*, AR p. 250 (August 27, 2014 Adult Disability Report reflecting that Plaintiff's "back injury" and "social anxiety disorder/anger management disorder) limited his ability to work); AR p. 263 (September 21, 2014 Adult Function Report wherein Plaintiff reported in response to question of what was limited his ability to work that "My back hurts bad very bad.  Whenever I sit or stand too long or try to do any kind of work around the house pain goes down my legs like fire!"); AR p. 42 (transcript of hearing before ALJ wherein Plaintiff asserted that he was disabled due to his back); AR p. 37 (Plaintiff's counsel stating that "the case focuses primarily around the claimant's lumbar impairment.").  As set noted herein, the ALJ ultimately found that Plaintiff's alleged mental impairment of anxiety was non-severe.  Plaintiff has not appealed that determination.

[9] AR pp. 104-107 (initial denial of DIB); AR pp. 108-111 (initial denial of SSI).

[10] AR pp. 112-113.

[11] AR pp. 33-59.

[12] AR pp. 13-31.

[13] AR pp 161-162.

[14] AR pp. 1-4.

[15] R. Doc. 1.

[16] *See*, 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.  The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.  You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

## II. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[17] If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[18]

## III. The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[19] The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[20] In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[21]

The burden rests upon the claimant throughout the first four steps of this five-step process

---

[17] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

[18] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

[19] 20 C.F.R. §§ 404.1505; 416.905.

[20] 20 C.F.R. §§ 404.1520; 416.920.

[21] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

to prove disability.[22] If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[23] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[24]

Here, the ALJ determined that Plaintiff met insured status requirements through December 31, 2012[25] and that Plaintiff had not engaged in substantial gainful activity since the alleged amended disability onset date of August 13, 2012.[26] The ALJ found that Plaintiff had severe impairments of hypertension, chronic obstructive pulmonary disease ("COPD"), and degenerative

---

[22] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[23] 20 C.F.R § 404.1520(g)(1).

[24] *Muse*, 925 F.2d at 789.

[25] For purposes of DIB, a claimant "must establish disability on or before the date last insured." *Luckey v. Astrue*, 458 Fed. Appx. 322, * 1, n. 1 (5th Cir. Dec. 19, 2011) (citing 20 C.F.R. § 404.131; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)). However, evidence post-dating the date last insured may be relevant "because it may bear upon the severity of the claimant's condition before expiration of his or her insured status." *Loza*, 219 F.3d at 394. Unlike DIB, "SSI benefits…provide assistant to a disabled needy claimant without regard to the claimant's coverage under the Act for disability insurance benefits." *Cieutat v. Bowen*, 824 F.2d 348, 359 (5th Cir. 1987). "In contrast to the insured status eligibility requirements for disability insurance benefits, there are no eligibility period requirements for SSI benefits. The SSA regulations provide that an application for SSI benefits remains effective from the date of application to the date of the final decision by the Secretary, or the date of court review, whichever is later." *Id*. (internal citation omitted). *See also*, 20 CFR § 416.330. Because SSI benefits are not payable prior to application, the relevant time period for such benefits begins on the date of application. *See*, *Buckley v. Astrue*, Civil Action No. 06-1625, 2008 WL 1805449, at * 3, n. 7 (W.D. La. March 25, 2008) (citing 20 CFR § 416.335). Although the periods of eligibility for DIB and SSI benefits differ here, the "law and regulations governing the determination of disability are the same for both" DIB and SSI. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). In making the determination regarding Plaintiff's RFC (which is the primary basis of Plaintiff's appeal here), the ALJ considered medical records reflecting time periods before Plaintiff's alleged disability onset date as well as after Plaintiff's date last insured. The undersigned similarly considers all medical records included in the administrative record either to provide context regarding Plaintiff's assertions of disabling pain (*i.e.* for records dated prior to Plaintiff's alleged disability onset date) and/or after the date last insured (because relevant to Plaintiff's claim for SSI).

[26] Although the ALJ confirmed that Plaintiff was amended his alleged disability onset date to August 13, 2012 during the March 30, 2016 hearing, AR pp. 37-38, and stated in his written decision that Plaintiff had amended his onset date to August 13, 2012, the written opinion then references August 31, 2012 as the amended disability onset date. *See*, AR pp. 17, 18 & 26. The undersigned assumes that the August 31, 2012 date was a typographical error. In any event, this transposition of the date does not affect the undersigned's analysis.

5

disc disease.[27] Based on Plaintiff's determined limitations, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot engage in climbing of ladder [sic], ropes, or scaffolds. He can perform unlimited balancing, but only occasional stooping, kneeling, crouching, and crawling. He must avoid concentrated exposure to pulmonary irritants.[28]

Utilizing this RFC, the ALJ determined that Plaintiff was unable to perform any past relevant work, but that Plaintiff was capable of performing other work, including the representative occupations of housekeeping and cafeteria attendant, such that Plaintiff was not disabled.

### IV.  Plaintiff's Allegations of Error

Plaintiff's briefing on appeal focuses on the ALJ's RFC determination and whether the RFC determination was supported by substantial evidence. Plaintiff argues that the ALJ failed to attach appropriate weight to the opinions of his two treating physicians, Dr. Clark and Dr. Schneider, in preference to certain findings of a consulting doctor, Dr. Gruezke, and that Plaintiff's COPD as well as objective findings concerning Plaintiff's back condition (positive straight leg raises and MRI results) were discounted by the ALJ. Plaintiff argues that had his limitations been correctly considered, "the proper and logical conclusion would be that the claimant cannot perform any activities at an exertional level higher than 'sedentary'" and concludes that the ALJ's determination that he could perform "light" work improperly led to a determination that he is not disabled.[29] Finally, Plaintiff asserts that "the ALJ erred in finding that jobs existed in significant

---

[27] The ALJ found that Plaintiff's asserted anxiety and depression were non-severe within the meaning of the Regulations. AR pp. 19-21. Plaintiff does not appeal the determination regarding the severity of his alleged mental impairments, nor does he argue that the ALJ failed to take his alleged mental impairments into account when determining Plaintiff's RFC.

[28] AR p. 21.

[29] In his opinion, the ALJ found that claimant was "50 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date" and that "claimant subsequently changed age category to closely approaching advanced age." AR p. 25. Based on Plaintiff's testimony and his application materials, Plaintiff turned 50 on August

6

numbers in the national economy that the claimant can perform based on his specific RFC."[30]

## V. Law and Analysis

### A. The ALJ Properly Weighed the Evidence From Plaintiff's Treating Physicians

Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."[31] However, an ALJ may reject the treating source's opinion when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'"[32] If the ALJ's decision is supported by substantial, contradictory, first-hand evidence from another physician, the ALJ is "not required to go through all six steps in

---

14, 2012. *See* AR pp. 38, 163 & 170. Under the regulations, a "younger person" is defined as someone "under age 50" while a "person closely approaching advanced age" is defined as "age 50-54." 20 CFR § 404.1563(c) & (d). Accordingly, on the amended onset date of August 13, 2012, Plaintiff was still 49 years old. Plaintiff does not raise any issue regarding his amended onset date or age classification in his appeal and in any event, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff could perform light (rather than sedentary) work. *See*, 20 CFR § 201(g) ("Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work") & (h)(1) (finding of disabled is warranted for individuals age 45-49 who are restricted to sedentary work, are unskilled and have no transferable skills, have no past relevant work or cannot perform past relevant work, and are unable to communicate in English or are able to speak and understand English but cannot read or write in English).

[30] R. Doc. 8, p. 6.

[31] *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). For claims filed on or after March 27, 2017, the federal regulations provide:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c. Because this claim was filed prior to March 27, 2017, the treating physician rule set forth in 20 C.F.R. § 404.1527 controls.

[32] *Walker v. Barnhart*, 158 Fed. Appx. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).

7

*Newton* [because] . . . the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his."[33] Further, "the ALJ may give 'less weight, little weight, or even no weight' to the opinion of a treating physician upon a showing of good cause."[34] In summary, an ALJ is free to discredit an opinion of a treating physician when it is contradicted by the evidence in the record.[35]

Plaintiff contends that the ALJ "did not follow the regulations as it relates to treating vs. non-treating physicians"[36] and asserts that the ALJ improperly discounted the "opinions and findings"[37] of his treating physicians in favor of a "non-treating" medical "consultant."[38] As a threshold matter, it is not entirely clear from Plaintiff's briefing which "non-treating" medical "consultant" to whom Plaintiff refers. While Plaintiff asserts that the ALJ improperly relied on the opinion of a "non-treating state agency psychological consultant,"[39] the only mental status

---

[33] *Cain v. Barnhart*, 193 Fed. Appx. 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 Fed. Appx. at 534)). To the extent Plaintiff contends that the ALJ was required to perform a detailed analysis of Dr. Schneider's opinion under the criteria set forth in 20 C.F.R. § 404.1527(d)(2), R. Doc. 8, p. 8, the Fifth Circuit has explained that "*absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist*, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 454 (5th Cir. 2000) (emphasis added). Because Dr. Schneider's own treatment notes, as well as those from Dr. Clark and Dr. Gruezke controvert the limitations purportedly set forth in the Medical Source Statement ("MSS"), the ALJ was not required to specifically analyze the 20 C.F.R. § 404.1527(d)(2) criteria. *Holifield v. Astrue*, 402 Fed. Appx. 24, 27 (5th Cir. 2010) ("This court has interpreted 20 C.F.R. § 404.1527(d)(2) to mean that, 'absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).' Since the record is replete with reliable medical evidence controverting Dr. Purser's opinions, the ALJ had no obligation to perform a detailed analysis before rejecting his opinions.") (citing *Newton*).

[34] *Ray v. Barnhart*, 163 Fed. Appx. 308, 313 (5th Cir. 2006) (quoting *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)).

[35] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ may reject a treating physician's opinion in favor of an examining physician where the evidence supports a contrary conclusion).

[36] R. Doc. 8, p. 8.

[37] R. Doc. 8, p. 8.

[38] R. Doc. 8, p. 9.

[39] R. Doc. 8, p. 9.

8

exam ("MSE") in the administrative record is a December 22, 2010 MSE completed by Dr. James Van Hook.[40]  Dr. Van Hook's opinion is dated well before Plaintiff's alleged disability onset date, and as noted above, Plaintiff has not challenged the ALJ's findings regarding his anxiety.  Further, when discussing the "state agency psychological consultant," Plaintiff refers back to "Section B" of his brief, which in turn cites to the opinions of two consulting physicians, Dr. Johnson and Dr. Gruezke.[41]  Dr. Johnson conducted a physical exam of Plaintiff on October 20, 2010 (*i.e.*, almost two years before Plaintiff's amended alleged disability onset date).[42]  Dr. Gruezke conducted a physical examination of Plaintiff on November 11, 2014 (*i.e.*, a little over one year after the alleged onset date).[43]

Likewise, Plaintiff's briefing is not explicit as to the treating source opinion he contends was improperly discounted.[44]  Presumably, Plaintiff's focus on "the treating physician rule" is an attempt to direct the court to a Medical Source Statement ("MSS") completed on July 24, 2015 by Dr. Schneider.[45]  The MSS form completed by Dr. Schneider includes various questions regarding Plaintiff's physical capabilities.  Dr. Schneider's responses reflect that during an 8 hour work day, Plaintiff can stand for 2 hours, sit for 4 hours, lift 10 pounds frequently, can tolerate very little stooping, should elevate his legs, and is required to use a single-point cane.[46]  In response to the

---

[40] AR pp. 323-325.

[41] *See*, R. Doc. 8, pp. 9 & 7.

[42] AR pp. 317-322.

[43] AR pp. 413-416.

[44] The undersigned has focused on the MSS completed by Dr. Schneider because the other physician characterized as a treating physician by Plaintiff, Dr. Clark, did not provide an opinion regarding Plaintiff's physical capabilities. Plaintiff acknowledges this fact in his briefing. R. Doc. 8, p. 10 ("While Dr. Clark did not provide any additional medical opinions beyond his treatment notes to the Administration, his information should be afforded great weight."). Further, while the administrative record includes Dr. Clark's treatment notes, as discussed herein, those notes do not reflect any significant functional limitations.

[45] AR pp. 434-436.

[46] AR pp. 434-435.

9

question, "Do you feel that this individual is capable of performing full-time work activity, be is sedentary, light or otherwise on a sustained basis; that is, without an unacceptable rate of absenteeism?," Dr. Schneider circled "No" on the MSS.[47] Although the ALJ considered Dr. Schneider's MSS opinion, he ultimately assigned it "little weight."[48] In doing so, the ALJ explained that the record did not support Plaintiff's use of a cane for ambulation, or that standing and walking were restricted. He specifically cited Dr. Schenider's own treatment notes as well as the physical examination findings reflected by Dr. Gruezke.[49] The ALJ additionally explained that although Dr. Schenider stated in the MSS that the maximum amount Plaintiff could lift "occasionally" was 10 pounds, Plaintiff's own hearing testimony regarding the amount of weight he could occasionally carry indicated a higher weight.[50]

As noted above, an ALJ is free to discredit the opinion of a treating physician when it is contradicted by the evidence in the record. Where an ALJ has found a treating physician's opinion to be inconsistent with that physician's own treatment records and other evidence in the record, this court has affirmed the ALJ's rejection of that opinion.[51] Here, the undersigned finds that ALJ

---

[47] AR p. 436. Although the form states that "most employers consider absenteeism of two or more days a month to be unacceptable," it does not provide any definition of the terms sedentary or light work. AR p. 436.

[48] AR p. 24.

[49] *Id*.

[50] AR p. 434. The undersigned finds it curious that Dr. Schneider circled 10 pounds as the maximum amount Plaintiff could lift on a frequent basis as well as the maximum amount Plaintiff could lift on an occasional basis. AR p. 434. Regardless of this seeming inconsistency, the ALJ relied on Plaintiff's own testimony during the hearing that he could lift around 30 to 35 pounds "across the room" one time. AR p. 46.

[51] *See*, *Villar v. Colvin*, Civil Action No. 14-562, 2015 WL 7731400 (M.D. La. Oct. 8, 2015) (affirming ALJ's rejection of treating physician's opinion where physician's own notes and other notes in the record failed to support the physician's opinion); *Miller v. Colvin*, Civil Action No. 14-675, 2016 WL 1178391, at * 4 (M.D. La. Feb. 25, 2016) (affirming ALJ's decision to afford little weight to treating psychiatrist's Mental Medical Source Statement where Statement was unsupported by psychiatrist's own treatment notes). *See also*, *Swan v. Colvin*, 2016 WL 5429669, at * 13 (M.D. La. Aug. 30, 2016) ("The Court finds it unnecessary to determine whether Dr. Morrison is a 'treating physician' because Dr. Morrison's November 26, 2013 Medical Source Statement is inconsistent with her treatment records and would not be entitled to substantial weight even if Dr. Morrison is a 'treating physician.' The Fifth Circuit has held that an ALJ may give less weight to a treating physician's opinion when good cause is shown, as is the case when his statement as to disability is so brief and conclusory that it lacks strong persuasive weight, is not supported

10

did not err in assigning "little weight" to the opinions set forth in the MSS in light of Dr. Schneider's own treatment notes, as well as the medical opinions of other examining physicians. While Dr. Schneider's treatment notes reflect Plaintiff's complaints of back pain,[52] the notes also consistently reflect that Plaintiff exhibited a full range of motion in his back[53] and indicate improvement and/or physical ability inconsistent with disability.[54] At no point did Dr. Schneider (or any other physician) prescribe Plaintiff a cane,[55] nor do Dr. Schneider's notes reflect any movement limitations. Likewise, notes from Plaintiff's other "treating" physician, Dr. Clark, show that Plaintiff was "continuing to work as an electrician" despite complaints of pain similar in intensity to pain Plaintiff now contends is disabling.[56]

With respect to Plaintiff's argument that the ALJ was not entitled to rely on Dr. Gruezke's opinion, the undersigned reiterates that an ALJ may reject a treating source's opinion when "'there

---

by medically acceptable clinical laboratory diagnostic techniques, *or is otherwise unsupported by the evidence*.") (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)) (Emphasis added by *Swan* court).

[52] AR p. 428 (February 13, 2015 treatment note including impression of "LBP" which the undersigned assumes is a notation for lower back pain); p. 427 (April 10, 2015 notation reflecting "LBP"); p. 425 (July 6, 2015 treatment not stating Plaintiff "pulled back Friday, burning pain in LBP with sciatica down to left knee"); p. 446 (noting worsen of lower back pain on August 4, 2015); p. 445 (September 4, 2015 note reflecting "lower back pain, no other complaints"); pp. 441-443 (October 30, 2015, November 25, 2015, and December 23, 2015 notes reflecting complaint of chronic back pain), p. 439 (February 22, 2016 note reflecting Plaintiff's complaint that "back hurts all the time.").

[53] AR pp. 425-431 (December 16, 2014-July 6, 2015); AR pp. 441-446 (August 4, 2015-December 23, 2015).

[54] AR pp. 431 (December 16, 2014 note reflecting that Plaintiff experienced "some [shortness of breath], tried to climb levee and ran out of breath"); p. 426 (June 15, 2015 note, "feeling good, no complaints").

[55] Although Plaintiff's counsel asserted during the hearing that Dr. Schneider recommended use of a cane, there is no recommendation for a cane in Dr. Schneider's treatment notes. Plaintiff may be referring to Dr. Schneider's response in the MSS, wherein Dr. Schneider circled that a single-point cane was a required ambulatory device. AR p. 435. For the reasons set forth herein, substantial evidence supports the ALJ's decision to give little weight to the MSS.

[56] *Compare* AR p. 380 (Louisiana Spine & Sports Medicine office visit note dated April 29, 2010 wherein Plaintiff reported pain as 5 out of 10 and Dr. Clark stated that Plaintiff continued to work as an electrician despite complications with bending) & p. 377 (Louisiana Spine & Sports Medicine office visit note dated July 28, 2010 wherein Plaintiff's pain average was 6 out of 10 and Dr. Clark noted Plaintiff "continues to work with minimal difficulty") *with* AR p. 357 (Louisiana Spine & Sports Medicine office visit note dated March 6, 2012 reflecting "[p]ain level is 4-5 on a scale of 0 to 10 with approximately 70% pain reduction with his current medication regime."); AR p. 353 (Louisiana Spine & Sports Medicine office visit note dated September 4, 2012 noting pain average of 4 out of 10); AR p. 351 (Louisiana Spine & Sports Medicine office visit note dated December 3, 2012 reflecting pain average of 4 out of 10 with Dr. Clarke noting Plaintiff "is doing well."); AR pp. 345, 343, 341 (Louisiana Spine & Sports Medicine office visit notes dated August 23, 2013, November 20, 2013, and February 18, 2014 reflecting pain averages of 5 or 6).

is competing first-hand medical evidence….'"[57] The Fifth Circuit has explained that "the ALJ is free to choose among the conclusions of two examining physicians, even though one is the claimant's treating physician."[58] Here, following a physical exam on November 11, 2014, Dr. Gruezke reported Plaintiff's chief complaint as "back pain."[59] Dr. Gruezke further reported Plaintiff had a full range of motion in all of his joints (including his back),[60] and notwithstanding positive straight leg tests, observed that Plaintiff was able to get up and out of a chair, up and off of the exam table, exhibited normal gait and station, and was able to bend and squat.[61] Dr. Gruezke's opinion reflects that Plaintiff reported his activities of daily living to include walking to his mother's house next door, watching television, going to the store, and "sometimes driv[ing] his four-wheeler on a good day."[62] Dr. Gruezke noted that while Plaintiff brought a simple cane with him to the exam, the cane was "not medically necessary nor was it used during the exam to ambulate."[63] Under such circumstances, it was not legal error for the ALJ to assign little weight to Dr. Schneider's opinion as set forth in the MSS.[64]

---

[57] *Walker*, 158 Fed. Appx. at 535.

[58] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

[59] AR p. 413.

[60] AR p. 415.

[61] AR pp. 414-415.

[62] AR p. 413.

[63] AR p. 416. Similarly, following an October 10, 2010 exam, Dr. Johnson reported that Plaintiff had past medical history significant for chronic back pain, spinal stenosis, lower back disc disease, anxiety, anger management disorder, and hypertension. AR p. 317. On physical exam, Dr. Johnson noted "[t]here is normal range of motion and strength of the patient's back with no tenderness, swelling, redness, or warmth." AR p. 319. Dr. Johnson further found that "[s]tooping, squatting, and heel-to-toe walk were normal. Gait and station are normal. The use of an assistive device is not needed for ambulation." AR p. 321. Per his functional assessment, Dr. Johnson reported that Plaintiff exhibited "normal pushing, pulling, and reaching with normal crouching, squatting, and stooping. The patient is able to climb on and off the table independently and is able to dress and undress himself independently." AR p. 320. At the time of Dr. Johnson's examination, Plaintiff reported that he was able to perform household activities, dress and feed himself, drive a vehicle and visit family, and enjoyed hunting as a recreational activity. AR p. 317. Although the ALJ did not cite Dr. Johnson's opinion in the discussion of the MSS, the ALJ did note Dr. Johnson's opinion when formulating Plaintiff's RFC. AR p. 22.

[64] To the extent Plaintiff seeks to rely on Dr. Schneider's medical source opinion for a determination of the ultimate issue of whether Plaintiff is able to work, the undersigned notes that "some opinions by physicians are not medical

## B. Substantial Evidence Supports the ALJ's RFC Determination

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[65] Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance.[66] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[67] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.[68] In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[69] Here, as stated above, the ALJ found that Plaintiff the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot engage in climbing of ladder [sic], ropes, or scaffolds. He can perform unlimited balancing, but only occasional stooping, kneeling, crouching, and crawling. He must avoid concentrated exposure to pulmonary irritants.[70]

---

opinions, and as such have no 'special significance' in the ALJ's determination." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (quoting 20 C.F.R. § 404.1527(e) & (e)(3)). "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank*, 326 F.3d at 620 (quoting 20 C.F.R. § 404.1527(e)(1)).

[65] *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[66] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[67] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

[68] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

[69] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[70] AR p. 21.

### i. The ALJ Did Not Err in Evaluating the Objective Evidence of Plaintiff's Back Condition

Throughout his briefing, Plaintiff contends that the ALJ failed to take into account objective evidence regarding his back condition.[71] The Fifth Circuit has explained that a Plaintiff alleging disability due to a back impairment "is required to establish that she suffered from a back impairment of disabling severity."[72] "The mere presence of some impairment is not disabling per se. Plaintiff must show that [Plaintiff] was so functionally impaired by [the] back trouble that [Plaintiff] was precluded from engaging in any substantial gainful activity."[73]

Here, the ALJ found that Plaintiff suffered from the severe impairment of degenerative disc disease.[74] The objective medical evidence cited by Plaintiff in his briefing provides support for the ALJ's determination that Plaintiff has a back problem[75] and the undersigned agrees that Plaintiff's medical records indicate that he consistently complained of lower back pain. However, such evidence does not in and of itself establish Plaintiff's disability. While Dr. Gruezke reported that Plaintiff had sitting and supine straight leg tests "positive for pain,"[76] he also observed that

---

[71] *See*, R. Doc. 8, p. 7 ("Of significance, Dr. Gruezke reports *positive straight leg tests in both the sitting and supine position*. But the Judge then discounts those findings without explanation."); p. 9 ("The Judge did not attach appropriate significance to the positive straight leg testing which provides an objective evaluation of the claimant's condition."); p. 10 ("in Dr. Clark's early treatment records, a reference is made to an MRI in 2007 that shows disc herniations in the claimant's lower back. Like the positive straight leg testing performed by Dr. Gruezke…the MRI provides *objective* evidence of disc problems.").

[72] *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

[73] *Id*.

[74] AR p. 18.

[75] *See*, *Hames*, 707 F.2d at 165 ("The Secretary did not find Plaintiff did not have a back problem. Rather he found that the degree of impairment evidenced by the objective medical finding did not impose functional restrictions of disabling severity on Plaintiff's activities.").

[76] AR p. 415 (reporting that Plaintiff "has a sitting straight leg test positive for pain at the limits of his range of motion which is full. He has a supine straight leg test positive for pain at 65 degrees for pain in his low back on the right and to 50 degrees on his left").

Plaintiff had a full range of motion in his back.[77] While Dr. Clark's treatment records also reflect positive straight leg raises[78] and additionally reference MRI results evidencing disc bulges and herniation,[79] Dr. Clark's notes also reflect that Plaintiff "markedly improved with physical therapy intervention" and indicate that Plaintiff was in the past able to work despite similar complaints of pain.[80] While "pain can constitute a disabling impairment,"[81] the Fifth Circuit has held that "[p]ain constitutes a disabling condition when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'"[82] There is no indication here that Plaintiff's pain stemming from his back condition constitutes such disabling pain.[83]

### ii. The RFC Takes Into Account Plaintiff's COPD

Plaintiff also contends, without any additional explanation, that "COPD was not considered

---

[77] AR p. 415.

[78] AR p. 403 (Louisiana Spine & Sports Medicine office visit note dated November 26, 2007).

[79] AR p. 386 (Louisiana Spine & Sports Medicine office visit note dated August 10, 2009). The undersigned notes that the MRI results themselves were not included in Plaintiff's medical records. Instead, Dr. Clark refers to the results of a past MRI throughout his treatment notes. *See*, *e.g.*, AR p. 376 (Louisiana Spine & Sports Medicine office visit note dated October 25, 2010 referring to MRI completed in 2007).

[80] *See*, *supra*, n. 54.

[81] *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

[82] *Id*.

[83] *See*, *Falco*, 27 F.3d at 163 ("The evidence demonstrated that, while Falco undoubtedly experienced some pain, he was able to spend a great deal of time watching television or dining with friends. Those activities are inconsistent with Falco's assertion that he could spend no more than 15-20 minutes sitting at a time. Moreover, Falco exhibited no external manifestations of debilitating pain such as marked weight loss."); *Jones v. Astrue*, Civil Action No. 11-510, 2012 WL 4325661, at * 5 (M.D. La. Sept. 20, 2012) ("assuming *arguendo* that plaintiff also meant to argue that her subjective pain should have been considered, evidence that plaintiff receives only conservative pain treatment substantially supports the ALJ's adverse credibility finding against complaints of incapacity and severe pain."). *See also*, *Hames*, 707 F.2d at 166 (explaining that "the test for disability under the Social Security Act is not satisfied merely because Plaintiff cannot work without some pain or discomfort" and "[t]he absence of any sign of severe or continuous pain as manifested by discernable and observable criteria such as significant weight loss, impairment of general nutrition, or other local morbid changes which would likely be present if this Plaintiff were under constant and severe pain, is also significant."). Here, Dr. Clark's treatment notes consistently state that Plaintiff's pain is reduced with medication. *See*, *e.g.*, AR p. 359 (February 8, 2012 note stating 60% pain reduction with medications); p. 357 (March 6, 2012 note reflecting 70% pain reduction with current medication); p. 353 (September 4, 2012 note stating 70% pain reduction with medication); p. 351 (December 3, 2012 note stating 60% pain reduction with medication). *See also*, AR p. 332 (February 6, 2012 physical therapy note reporting that following 4 visits, Plaintiff "is sleeping through the night. He is waking up feeling better in the morning. He is able to perform more ADL's without pain….").

as significant when the ALJ evaluated the claimant's condition and formed the residual functional capacity."[84]  As noted above, the ALJ found Plaintiff's COPD to be a severe impairment. Significantly, Plaintiff's RFC provides that Plaintiff must "avoid concentrated exposure to pulmonary irritants."[85]  Plaintiff does not point to any medical evidence requiring any additional accommodation with respect to his COPD, nor does he respond in his reply brief to the Commissioner's assertion that "[t]he ALJ adequately accounted for Plaintiff's COPD by limiting him to light work, rather than medium or heavy work, and by finding that he must avoid concentrated exposure to pulmonary irritants."[86]  While Plaintiff testified during the hearing before the ALJ that he used an inhaler for his COPD,[87] there was no further discussion regarding any limitations due to his COPD and Plaintiff's attorney did not seek to revise the hypothetical posed to the VE which included the limitation of avoiding concentrated exposure to pulmonary irritants. Treatment notes indicate that Dr. Schneider consistently recommended that Plaintiff quit smoking, but there is no indication that Plaintiff did so.[88]  A December 2, 2014 chest x-ray included in Dr. Schneider's records includes the finding that Plaintiff's "lungs appear clear."[89]  Finally, in a September 21, 2014 Adult Function Report completed by Plaintiff, Plaintiff did not mention his COPD.[90]  Accordingly, the undersigned finds that the RFC adequately took into account any

---

[84] R. Doc. 8, p. 11.

[85] AR p. 21.

[86] R. Doc. 11, p. 7.

[87] AR p. 48.

[88] *See*, AR p. 447 (November 14, 2014 treatment note); AR p. 430 (January 16, 2015 treatment note); AR p. 426 (June 3, 2015 treatment note); AR p. 442 (November 25, 2015 treatment note).  *See also*, AR p. 329 (Our Lady of the Lake ER note indicating Plaintiff smokes one-half pack of cigarettes a day); AR p. 413 (November 11, 2014 physical examination by Dr. Gruezke noting social history to include smoking one-half pack of cigarettes a day).

[89] AR p. 419.

[90] AR pp. 263-270.  Plaintiff self-described his allegedly disabling condition as "my back hurts bad very bad."  AR p. 263.

16

limitations stemming from Plaintiff's COPD.[91]

### iii. Light Versus Sedentary Work

Finally, Plaintiff contends that had Plaintiff's limitations "been properly considered," the ALJ would have found that Plaintiff could only perform work at a "sedentary" rather than "light" level.[92] While Plaintiff complains that the RFC determination suggests "far more lifting, walking, standing and exerting than the claimant is able to withstand," Plaintiff does not cite to any particular portion of the administrative record to support that assertion.[93]

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."[94] A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.[95] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[96]

The undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff is able to perform light work as defined in the Social Security Regulations. In his decision, the ALJ found that Plaintiff had the RFC to perform light work "as defined in 20 CFR 404.1567(b)"

---

[91] *See*, *Jones v. Berryhill*, Civil Action No. 16-12569, 2017 WL 3977633, at * 9 (E.D. La. Aug. 15, 2017) (finding RFC which limited claimant to light work without exposure to temperature extremes and concentrated exposure to environmental irritants adequately accounted for claimant's COPD where only medically recommended limitations were to "avoid smoke and harsh chemicals."). Here, the Plaintiff has not pointed to a similar recommendation.

[92] R. Doc. 8, p. 11.

[93] Instead, Plaintiff states that "the claimant's limitations are detailed in the testimony and supported by objective medical evidence." R. Doc. 8, p. 12.

[94] *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).

[95] *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[96] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

with certain restrictions.[97] Plaintiff testified that he could pick up a gallon of milk repetitively[98] and could lift and carry "30, 35 pounds" across the room once.[99] Dr. Gruezke noted that Plaintiff was able to get up and out of a chair and up and off of the exam table without use of a cane[100] and that Plaintiff had no maximum standing or walking capacity.[101] Dr. Gruezke also noted that on a good day Plaintiff "sometimes drives his four-wheeler."[102] Plaintiff self-reported that he walked to his mother's house (next door) two or three times a day and was able to feed chickens, carry laundry to his mother's house, walk and drive, and went to the store once a day for a "coke or a snack."[103] Plaintiff has not pointed to any evidence that indicates that he has any limitations with respect to pushing and pulling or arm or leg controls. Accordingly, the undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff had the residual functional capacity to perform light work as defined in the Regulations.

### C. The ALJ's Step Five Determination

Finally, Plaintiff asserts that "the ALJ erred in finding that jobs existed in significant numbers in the national economy that the claimant can perform based on his specific RFC."[104] Plaintiff does not provide any additional explanation regarding this assertion. To the extent Plaintiff is again challenging the RFC determination, the undersigned finds (as discussed above),

---

[97] The ALJ also cited 20 CFR § 416.967(b), which sets out the same definition of light work for purposes of SSI benefits. AR p. 21.

[98] AR p. 47.

[99] AR p. 46.

[100] Plaintiff did not bring a cane with him to the hearing before the ALJ. AR p. 46.

[101] AR pp. 414 & 416.

[102] AR p. 413.

[103] *See*, September 21, 2104 Adult Function Report, AR pp. 263-270.

[104] R. Doc. 8, p. 6.

that the RFC set forth by the ALJ is supported by substantial evidence.[105] To the extent Plaintiff is challenging the ALJ's reliance on the testimony of the VE, the undersigned again notes that Plaintiff's counsel did not challenge or modify any of the hypotheticals posed to the VE during the hearing and that the hypothetical posed to the VE incorporated the limitations included in Plaintiff's RFC.[106] An ALJ may rely on a vocational expert's testimony when identifying jobs "as evidence of [claimant's] ability to perform work in the national economy."[107] Accordingly, the undersigned finds that the ALJ's step five determination that Plaintiff was not disabled was supported by substantial evidence and that the ALJ did not commit legal error in relying on the vocational expert's testimony in so finding.[108]

---

[105] With respect to the RFC, Plaintiff asserts that the "ALJ should have limited claimant to a 'sedentary' exertional level at best. Once again, if the proper use of these exertional levels had been applied – based upon both the objective and subjective evidence – a determination of 'disabled' would have been warranted. Pursuant to the Medical-Vocational Rules, with no transferable skills, the claimant should be considered 'disabled.'" R. Doc. 8, p. 12. Because the undersigned finds substantial evidence supports the RFC determination, it is not necessary to consider whether Plaintiff would be considered disabled under the Medical-Vocational Guidelines had he been limited to sedentary work. *See*, *Jones*, 2017 WL 3977633, at * 9, n. 5 ("Ms. Jones also lists a fourth argument: that a finding of disabled would be appropriate under the Medical Vocational Guideline 201.10 because under that guideline, a person of Ms. Jones's age who is limited to sedentary work would be categorized as disabled. The Court does not consider this as a separate assignment of error because it is predicated on a finding that the ALJ's determination of Ms. Jones's residual functional capacity is not supported by substantial evidence and that the ALJ should have limited Ms. Jones to sedentary work. As discussed in this section, the ALJ's limitation to light work is supported by substantial evidence.").

[106] During the hearing, the ALJ posed an initial hypothetical of light work, no climbing of ladders, ropes, scaffolds, unlimited balance, occasional stooping, kneeling, crouching, and crawling, occasional climbing of ramps and stairs. AR p. 56. The vocational expert testified that Plaintiff would be unable to do his past work as a bug sprayer because Plaintiff could not climb ladders. AR p. 56. The vocational expert testified that someone fitting the hypothetical could perform work as a housekeeper or cafeteria attendant. AR p. 57. In the ALJ's third hypothetical, the ALJ asked the vocational expert to incorporate the limitations of the initial hypothetical and to add avoidance of concentrated exposure to pulmonary irritants. AR p. 58. The vocational expert testified that such hypothetical person could still perform the jobs of housekeeper or cafeteria attendant. AR p. 58.

[107] *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

[108] *See*, *Masterson v. Barnhart*, 309 F.3d 267, 374 (5th Cir. 2002) (finding substantial evidence supported ALJ's RFC finding and noting that the ALJ "expressly and rightly relied on the testimony" of the vocational expert and that claimant "offered no contrary evidence and thus did not satisfy his burden to prove that he could not perform the kinds of jobs identified" by the vocational expert).

## VI. Recommendation

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff was not disabled. Accordingly, the undersigned recommends that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security, Nancy A. Berryhill, denying the applications for disability insurance benefits and supplemental security income filed by plaintiff, John Glynn Breau, be affirmed and this action be dismissed.

Signed in Baton Rouge, Louisiana, on August 14, 2018.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**